C. J. TAGLIABUE MFG. Co. *v.* UNITED STATES (No. 3549) [1]

United States Court of Customs and Patent Appeals, November 6, 1933

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 13, 1933, by Mr. George J. Puckhafer and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The issue in this appeal from the judgment of the United States Customs Court, which overruled the protests of appellant and sus-

---

[1] T.D. 46751.

tained the classification of the collector, involves the sole question of the proper construction to be given to the language used in paragraph 368, the clock and clock movement paragraph of the Tariff Act of 1922.

The imported merchandise was classified by the collector under said paragraph 368. The appellant protested and claimed the merchandise dutiable as "all other machines" under paragraph 372 of the same act.

Two types of mechanism were imported—mono and duplex. Both operate on the same principle. They determine the proportion of $CO_2$ gas present in a flue box and aid the fireman in economically regulating the combustion of fuel, and indicate when more or less air is needed in the firebox. The appraiser states:

They do not measure gas but denote the percentage of carbon dioxide in flue gas. This operation is recorded at predetermined times through the medium of the clockwork mechanisms.

The collector based his classification upon the above findings of the appraiser.

In order that the nature of the mechanism may be thoroughly understood, we quote the description of the same from the opinion of the court below, which description was taken from the brief of counsel for the plaintiff (appellant here), and which is conceded to be accurate by the Government:

It is a mechanism in which water is the motive power. The water power actuates a mercury pump which pushes a volume of flue gas measuring about 100 cubic centimeters through the apparatus until it comes to an absorption solution tank containing caustic potash, which removes the carbon dioxide content of flue gas. The reduced volume of gas then passes by pressure into a gasometer, causing it to rise, and as it rises it actuates a ball and by means of a pulley and counterweight the upward travel of the gasometer ball causes a pen to make a record on a chart.

The duplex machine is a variation of the mono, but operates upon the same principle. The difference lies in the fact that two records are made; that is, one to show the percentage of $CO_2$ gas and the other the percentage of combustible gas in the boiler.

The chart above referred to is rotated by means of a clockwork mechanism, so that it moves from right to left. The instrument or clock is used for the purpose of turning the chart so that the pen will make a record of the percentage of $CO_2$ gas in both machines and in addition the percentage of combustible gases in the duplex machine.

The pertinent portions of the two competing paragraphs follow:

PAR. 368. Clocks and clock movements, including lever clock movements, and clockwork mechanisms, cased or uncased, whether imported complete or in parts, and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times, any of the foregoing

whether wholly or partly complete or knocked down (in which condition they shall be appraised at the valuation of the complete article); cases and casings for clockwork mechanisms imported separately; all the foregoing, 45 percentum ad valorem; and in addition thereto, upon any of the foregoing articles or parts thereof, * * * if without jewels in the escapement and valued at * * * more than $10 each, $3 each; * * *.

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem.

There is no serious question here but that the mechanism imported ·is a machine and the sole question presented is whether or not the article is described and provided for in paragraph 368. The· appraiser and the court below found that it fell under that portion of paragraph 368 which follows:

PAR. 368. * * * any device or mechanism having an essential operating feature * * * for recording, indicating, or performing any operation or function at a predetermined time or times, * * *.

The importer argues here that the mechanism is not set or is not capable of being set for performing any operation or function at a predetermined time or times, but that it performs the act of recording at all times when the machine is in operation. Examples of devices performing a function at a predetermined time were suggested as being alarm clocks, and clockwork mechanisms which open bank vaults at predetermined times.

The importer further contends that it could not be regarded as a clock or clock movement because it was more than either, and that it was not a mechanism "intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses", inasmuch as time, distance and fares were not involved, and that it did not measure the flowage of gas but did measure the quantity of gas of a certain kind in a given amount of the contents of the boiler. The importer further argues that it does not fall under the provision for a mechanism for "regulating or controlling the speed of arbors, drums, disks, or similar uses", inasmuch as it did not "regulate" or "control" anything.

In the last contention we think the importer is in error. The clockwork mechanism in the device is "essential" to the operation of this kind of device and it is an operating feature of the same. We think that it is intended for "regulating or controlling" the speed of the disks or chart upon which the record of the gas content of the boiler is made. The movement of the chart is so timed that there may be determined, from an observation of the same, the exact amount of gas in the flue at a given time of day or night, that is to say, within five minutes of the exact time. The clock moves the chart, and therefore controls or regulates such movement and its speed, so as to make the record on the chart conform with the approximate time when the record was made. One of importer's witnesses

testified to the effect that the clock made the chart move constantly with regularity. The argument that it does not regulate or control the speed of the mechanism seems to us to be tenuous. But, if the words "regulating" and "controlling" are used in such a technical sense as is contended for by appellant, we know of no reason why the term in the same part of the paragraph, "or similar uses", would not aptly apply and bring the apparatus at bar into the provision.

The importer further contends that if the clockwork mechanism and the chart operated by it fall within the provision of the paragraph, the remaining portion of the mechanism, that is, that portion which only indicates by a dial hand the amount of gas at a given time, is separable from the clockwork mechanism, and that the whole device is not an entirety; that the two portions of the device should be separated for classification purposes. It is argued that, unless this position is taken, a minor clockwork mechanism will ofttimes control the classification of devices of which the clockwork mechanism is only an insignificant part, and also that Congress has evidenced an intent, where possible, to segregate, for dutiable purposes, clockwork mechanisms, wherever found.

It may be that certain important mechanisms might be suggested where the clock is such an insignificant part of the whole as to make it seem unreasonable to conclude that Congress intended for the clockwork mechanism to be the controlling feature in classification, but we do not view the device at bar as belonging to that category, if there be such. All parts of the device are contained in one compact case, and both functions, indicating and recording, are performed simultaneously. It is the nature of the device at bar to perform these two closely related functions at the same time.

This finding, we conclude, is not contrary to this court's holding on the question of entireties in the recent hand bag and watch case, *United States* v. *Wanamaker*, 20 C.C.P.A. (Customs) 367, T.D. 46132. There the court said there was—

no natural affinity or relation between a leather hand bag and a watch. Neither is normally essential to the completeness of the other.

In the device at bar, recording and indicating go hand in hand and both functions are essential for accomplishing the purposes desired. There is a natural affinity or relation between the two parts.

We conclude that the merchandise is described and provided for in paragraph 368. The provisions of paragraph 368 are more specific as applied to the importation than are the provisions of paragraph 372. The classification of the collector under paragraph 368 was proper, and the judgment of the United States Customs Court is *affirmed.*

LENROOT, Judge, dissents.